UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

          Plaintiff,      Case No. 21-cr-20566

v.                                Judith E. Levy
                                United States District Judge

Frederick Dixon,
                                Mag. Judge David R. Grand

          Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION [106]**

Before the Court is Defendant Frederick Dixon's[1] motion for reconsideration. (ECF No. 106.) Defendant filed two motions to suppress evidence on June 16, 2023. (ECF Nos. 91, 93.) The Court held a hearing on these motions on August 15, 2023, and denied both. (ECF No. 99.) On October 2, 2023, Defendant filed a motion for reconsideration pursuant to Local Rule 7.1. (ECF No. 106.)[2]

For the reasons set forth below, Defendant's motion is DENIED.

---

[1] Defendant also goes by Antar Bantu.
[2] The Court granted two motions for an extension of time to file his motion for reconsideration. (ECF Nos. 101, 103.)

## I.   Background

Defendant is charged with three counts: one count of conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1), and two counts of possession with intent to distribute controlled substances. 21 U.S.C. §§ 841(a)(1). (ECF No. 1, PageID.1–3; ECF No. 91, PageID.507–508.)

The charges "arise from evidence obtained from two search warrants to obtain precise location data in real time (PING warrants) for a phone number that was alleged to be Defendant's cell phone." (ECF No. 91, PageID.508.) "The affiant on both affidavits [was] DEA Special Agent Kenneth Meier," and the search warrants were signed by Washtenaw County District Court Magistrate Elisha Fink. (*Id.*)

Both affidavits state that the "Affiant believes that probable cause has been established to search the . . . device and obtain associated cell phone location records from the cell service provider." (ECF No. 91-1, PageID.531; ECF No. 91-2, PageID.538.) The first affidavit, dated July 12, 2020, "purports to set out probable cause to obtain precise location data on the target cell phone for the purpose of tracking the phone within and outside of the State of Michigan." (ECF No. 91, PageID.509;

2

ECF No. 91-2.) The second affidavit, dated August 12, 2020, "purports to establish probable cause based on the averments in the first affidavit [] and evidence subsequently seized as a result of the first [] search warrant." (ECF No. 91, PageID.509; ECF No. 91-2.)

## II. Legal Standard

"Although the Federal Rules of Criminal Procedure do not authorize motions for reconsideration, the Supreme Court determined many years ago that defendants may file them." *United States v. Mack*, 831 F. App'x 787, 787 (6th Cir. 2020) (citing *United States v. Healy*, 376 U.S. 75, 78 (1964)). Motions for reconsideration in criminal cases are generally treated like motions for reconsideration in civil cases, which are governed by Eastern District of Michigan Local Rule 7.1(h). *See, e.g., United States v. Boston*, No. 14-20383, 2021 WL 598547 at *1 (E.D. Mich. Feb. 16, 2021) (Edmunds, J.). Eastern District of Michigan Local Rule 7.1(h)(2) provides:

> Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days after entry of the order and may be brought *only* upon the following grounds:
> 
> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the

3

>     mistake was based on the record and law before the court at the time of its prior decision;
>     (B) An intervening change in controlling law warrants a different outcome; or
>     (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2). "[M]otions for reconsideration are not an opportunity to re-argue a case, present new arguments, or otherwise relitigate issues that the court previously considered." *Bowles v. Macomb Cmty. Coll.*, No. 20-13175, 2022 WL 1469515, at *1 (E.D. Mich. May 10, 2022).

### III. Analysis

Defendant brings this motion for reconsideration under Local Rule 7.1(h)(2)(A). (ECF No. 106, PageID.728.)

Defendant challenges three of the Court's decisions:

> (1) Its determination that there is no authority that Magistrate Fink was not authorized to issue a PING warrant to be executed outside of Michigan; (2) that the affidavit established probable cause; and (3) that any deficiencies in the first warrant were saved by "good cause."

(*Id.* at PageID.731 (citing ECF No. 102, PageID.697–700).)

Defendant's motion fails because the good faith exception applies, regardless of any alleged deficiencies.

According to the Sixth Circuit, the "'good faith' exception to the exclusionary rule [applies] for evidence seized in 'reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *United States v. Ward*, 967 F.3d 550, 554 (6th Cir. 2020). "In deciding if the good faith exception applies, courts ask 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* "[I]f [the Court] find[s] that the good-faith exception applies, [the Court] need not address the constitutionality of the search." *United States v. Robinson*, 744 F. App'x 277, 279 (6th Cir. 2018).

There are four situations in which the good faith exception does not apply:

> 1) the supporting affidavit contained knowing or reckless falsity[;] 2) the issuing magistrate failed to act in a neutral and detached fashion and served merely as a rubber stamp for the police; 3) the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause; or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*United States v. Hammond*, 351 F.3d 765, 773–74 (6th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897 (1984)). Here, Defendant argues that "the second, third and fourth *Leon* factor[s] negate any reasonably

5

well-trained officer's reliance on this warrant for out-of-state PING searching." (ECF No. 106, PageID.746.)

### A. Even if Magistrate Fink is not authorized to issue the warrant, the good faith exception would apply.

Even if Magistrate Fink lacked the authority to sign the warrant, the good faith exception would apply. Defendant argues that Magistrate Fink "abandoned her judicial role by signing a warrant she had no authority to issue." (*Id.* at PageID.747.) He also argues that a well-trained officer should have known that Magistrate Fink abandoned her judicial role, which negates good-faith reliance on the warrant. (*Id.*) This implicates the second and fourth *Leon* factors.

First, the Court is not convinced that Magistrate Fink lacked authority to issue the warrant. The Court previously determined that Magistrate Fink had this authority. (ECF No. 102, PageID.679–681.) Defendant, in the present motion, argues that this determination is incorrect because, under the Fourth Amendment, the magistrate who issued the search warrant must have specific authorization to do so. (ECF No. 106, PageID.732.) Defendant cites *Shadwick v. City of Tampa*, 407 U.S. 345 (1972), and *United States v. Lefkowitz*, 285 U.S. 452 (1932), to support this contention.

6

The Court is not convinced that such a requirement exists under the Fourth Amendment. Defendant quotes *Shadwick*, stating that "[t]he single question is whether power has been lawfully vested, not whether it has [been] constitutionally exercised." (ECF No. 106, PageID.732 (quoting *Shadwick*, 407 U.S. at 352).) However, this sentence from *Shadwick* describes the scope of the Supreme Court's decision, not a Fourth Amendment requirement. Similarly, a passing statement of "empowered" magistrates in *Lefkowitz*, an abrogated Supreme Court case, does not convince the Court that Magistrate Fink needed explicit authority to sign a PING warrant for a phone that would likely cross state lines.

Additionally, the Court is not convinced that Michigan black letter law disallows Fink from signing this kind of warrant. Defendant cites *Tyler v. The People*, 7 Mich. 161 (1859), and *McEwan v. Zimmer*, 38 Mich. 765 (1878), which have to do with questions of jurisdiction between the United States and a foreign country like Canada.[3]

---

[3] *Tyler* held that a crime that occurred in Canada is not within the jurisdiction of a United States court and cannot be punished under United States law. *Tyler*, 7 Mich. at 208. Similarly, *McEwan* held that a judgment of a foreign court against a United States citizen is not binding against the U.S. citizen, and

Defendant does not explain why these principles should apply in this situation where the phone to be tracked was within the Magistrate's jurisdiction at the time and would travel out of state while being tracked. Further, Defendant cites *Stewart v. Eaton* for the contention that "[t]he authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established" and that "[a]ny attempt to exercise authority beyond those limits would be deemed . . . an illegitimate assumption of power." (ECF No. 106, PageID.734 (quoting *Stewart v. Eaton*, 287 Mich. 466, 473–74 (1939).) Again, Defendant does not explain why *Stewart* – which involved a deficiency judgment against a mortgage when there was no personal service of process against one of the parties – has any bearing on whether Michigan law allows a magistrate to sign a search warrant like the one in this case. *Stewart*, 287 Mich. at 472.[4]

Second, there is no requirement that evidence must be excluded if the signing magistrate lacked authority to sign the warrant. Defendant

---

that service of process beyond the foreign court's jurisdiction is ineffective. *McEwan*, 38 Mich. at 768–69.

 [4] *Stewart* is no longer good law; its conclusions rely on the Supreme Court's holding in *Pennoyer v. Neff*, 95 U.S. 714 (1877), which no longer governs how courts determine personal jurisdiction. *See, e.g., Shaffer v. Heitner*, 433 U.S. 186, 206 (1977).

8

argues that the good faith exception is inapplicable because "when the credentials of a state magistrate are a matter of state law and the state court officer lacks authority under state law to issue a warrant, the warrant is not issued by the 'magistrate' required by the Fourth Amendment." (ECF No. 106, PageID.744.) However, in *United States v. Master*, it was "undisputed" that the judge in that case did not have the authority to authorize the warrant in question. *Master*, 614 F.3d 236, 239–40 (6th Cir. 2010). The Sixth Circuit stated that the good faith exception may still apply, as "[a]rguably, the issuing magistrate's lack of authority has no impact on police misconduct, if the officers mistakenly, but inadvertently, presented the warrant to an incorrect magistrate." *Id.* at 242. Thus, there is no *per se* rule that a lack of authority results in automatic exclusion of evidence.[5]

---

[5] Defendant urges the Court to reconsider its rejection of several cases. (ECF No. 106, PageID.744.) These cases remain unconvincing. In *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), the Supreme Court described a "per se rule of disqualification" when a prosecutor approved a warrant, but Magistrate Fink is a judge, not a member of law enforcement. While *United States v. Scott*, 260 F.3d 512 (6th Cir. 2001), does hold that a warrant is void *ab initio* when signed by someone who lacks legal authority, the Sixth Circuit limited *Scott*'s holding in *Master*, 614 F.3d 236 (6th Cir. 2010). *Master* held that the good faith exception may apply when a warrant is signed by someone who lacked legal authority to do so. *Id.* at 241. Finally, the holding in *United States v. Neering*, 194 F. Supp. 2d 620 (E.D. Mich. 2002), is not convincing in light of *Master*.

Third, a "reasonably well trained officer would not have known that the search was illegal" despite Magistrate Fink's authorization. *Ward*, 967 F.3d at 554. The "exclusionary rule was crafted to curb police rather than judicial misconduct." *Master*, 614 F.3d at 242 (quoting *Herring v. United States*, 555 U.S. 135, 142 (2009)). As stated previously, the Court has not been able to find a single case demonstrating that a Michigan magistrate judge cannot sign a search warrant for PING data, even if the subject of the search warrant crosses state lines. (ECF No. 102, PageID.679–681.) Thus, there is no indication that Magistrate Fink nor Agent Meier should have known that she lacked the authority to sign this warrant.

### B.  The good faith exception also applies to Agent Meier's affidavit.

Defendant also argues that "no reasonably well-trained officer could rely on the magistrate's signature to authorize the first PING search where this 'barebones' affidavit failed on its face to establish a factual nexus between Defendant's phone and the alleged criminal activity by Defendant." (ECF No. 106, PageID.747.) This argument invokes the third and fourth *Leon* factors.

10

Defendant urges the Court to follow the decision in *United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016). The court in *Ramirez* ruled that a warrant to search Ramirez's cell phone lacked probable cause – and that the good faith exception should not apply – because "[t]he only information in the affidavit indicating any likelihood that evidence of a crime might be found on Ramirez's phone was the fact that he was arrested for an alleged drug conspiracy while he possessed the phone." *Id.* at 495. "Possessing a cell phone during one's arrest for a drug-related conspiracy is insufficient" on its own to establish a nexus. *Id.*

The *Ramirez* affidavit also included that the affiant – a detective – knew "through training and field experience that individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victim." *Id.* at 494. The court in *Ramirez* stated that the detective's "training and experience" can be considered in determining probable cause but "cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the cell phone and any criminal activity." *Id.* at 495 (internal quotation marks omitted).

*Ramirez* is distinguishable from the present case. *Ramirez* concerned a search of a phone's contents, while this case involves tracking the location of a cell phone. (ECF No. 106, PageID.741 ("Defendant asks this Court to reconsider its determination that Agent Meier's affidavit established probable cause to PING search Defendant's phone.").) Agent Meier's affidavit provides more information than the affidavit in *Ramirez*, as the confidential informant "provided the [telephone number] as the number in use" by Defendant and that Defendant was traveling out of state and would return with "bulk drugs obtained from out of state." (ECF No. 91-1, PageID.530.) Further, Defendant "was actively being sought by MDOC for his active parole absconder warrant," and the "use of a precision location GPS over [the telephone number]" would provide intelligence on drug trafficking and "allow investigators to locate [Defendant] for the purpose of taking him into custody on his outstanding MDOC warrant." (*Id.* at PageID.530–531.) Unlike the affidavit in *Ramirez*, the affidavit is sufficient by itself to establish a nexus between the cell phone's location and alleged unlawful activity.

12

Even if Agent Meier's affidavit failed to establish a sufficient nexus such that the warrant lacked probable cause, the good faith exception applies here because the affidavit was not "bare bones." "A police officer does not 'manifest objective good faith in relying on a warrant' if the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). The good-faith standard requires that the affidavit "draw some plausible connection" between the evidence sought and the subject of the search. *Id.* at 386. As described previously, the affidavit contains sufficient information such that reliance on the warrant was reasonable.

Thus, the third and fourth *Leon* factors do not apply to Defendant's case. Defendant's motion for reconsideration on this issue is denied.

### C. Federal Rule of Criminal Procedure 41 does not change the outcome.

To the extent that Defendant argues that the "good faith" exception does not apply because Federal Rule of Criminal Procedure 41 was violated, his argument is rejected. (*See* ECF No. 106, PageID.736

13

("FRCrP 41(b) is no authority for the out-of-state search warrant authorized here."); *Id.* at PageID.744 ("FRCrP 41(b)(1) did not authorize a state court jurist to issue the search warrant Agent Meier was seeking to PING Mr. Dixon's phone (and Mr. Dixon himself) outside of Michigan. This lack of authority to issue this particular PING warrant is not a technical or de minimus violation of the Fourth Amendment.").)

First, Defendant has not demonstrated that Magistrate Fink lacked authority to sign the warrant under Michigan law. Under *United States v. Searp*, 586 F.2d 1117, 1122 (6th Cir. 1978), the Sixth Circuit held that "application of the exclusionary rule is not warranted," despite a violation of Rule 41(c), because the search was "conducted pursuant to a valid state warrant, and met the requirements of the [F]ourth [A]mendment." So too, here.

Additionally, Defendant has not shown that application of the exclusionary rule to this case would be appropriate. In *United States v. Williams*, the Sixth Circuit stated that a violation of Rule 41 by a task force would trigger the exclusionary rule "only if 1) there was prejudice in the sense that the search might not have occurred or would not have been so intrusive if the Rule had been followed, or 2) there is evidence of

14

intentional and deliberate disregard of a provision of [Rule 41]." *Williams*, No. 20-3310, 2021 WL 3079698, at *2 (6th Cir. July 21, 2021) (quoting *United States v. Hopper*, 58 F. App'x 619, 627 (6th Cir. 2003)). Here, there is no evidence of either in the record.

Finally, the facts in this case are significantly different from those in *United States v. Krueger*, 809 F.3d 1109 (10th Cir. 2015). In *Krueger*, both warrants were issued by federal magistrate judges and were obtained under Federal Rule of Criminal Procedure 41. *Id.* at 1111. Here, the warrants were issued by a state magistrate under state law.

Thus, Defendant's motion for reconsideration on this issue is denied.

## IV. Conclusion

For the reasons set forth above, the Court DENIES Defendant's motion for reconsideration.

IT IS SO ORDERED.

Dated: January 31, 2024            s/Judith E. Levy
Ann Arbor, Michigan                JUDITH E. LEVY
                                   United States District Judge

15

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 31, 2024.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager
